IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATHANIAL WILLIAM L.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 3:21-cv-01776-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Nathanial L. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in September 1989, plaintiff alleges disability beginning January 1, 2013 – which coincides with his discharge from the Army – due to anxiety, depression, post-traumatic stress disorder, and lower limb issues. Tr. 180, 203. His application was denied initially and upon reconsideration. On October 6, 2020, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 62-95. On October 26, 2020, the ALJ issued a decision finding plaintiff not disabled. Tr. 44-58. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6. On January 26, 2024, this case was reassigned to the Judicial Officer below (doc. 19).

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity "from his alleged onset date of January 1, 2013 through his date last insured of December 31, 2018." Tr. 46. At step two, the ALJ determined "depression and anxiety" were medically determinable and severe impairments. *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 47.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. §

---

[2] The record before the Court is approximately 700 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

Page 2 – OPINION AND ORDER

404.1567(b) "except [he] is limited to simple, routine work; occasional contact with supervisors and coworkers; and no public contact." Tr. 48.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 56. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as marker, small products assembler, and routing clerk. Tr. 57.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) crafting an RFC that was not based on any medical opinion evidence; (2) discrediting his subjective symptom statements; and (3) improperly assessing the lay witness testimony of his mother. The Court finds the first issue raised by plaintiff dispositive.

**I.    RFC Formulation**

Plaintiff contends that, because "the ALJ purported to find that the opinions of the state agency reviewing doctors were not persuasive" and "the medical record was also devoid of any medical source statements from any of Plaintiff's own treating or examining providers assessing functional limitations," the ALJ erroneously relied on "his own lay opinion" in formulating the RFC. Pl.'s Opening Br. 6 (doc. 13) (citing 20 C.F.R. §§ 404.1517, 404.1519(a)).

An independent review of the record reveals that plaintiff first reported significant mental health symptoms in August 2016, although his chart notes contain passing references to such symptoms prior to that date. Tr. 422-23, 536-40. In September 2016, plaintiff underwent an initial assessment through Veterans Affairs and was diagnosed with depression and anxiety with a somatic focus. Tr. 492, 523-24. He continued to report ongoing symptoms during the spring of 2017. Tr. 419-20, 650. He was resistant to obtaining treatment, instead choosing to initially focus

Page 3 – OPINION AND ORDER

on his physical impairments,[3] but nonetheless initiated private counseling in April 2018 which continued through the date of the hearing. Tr. 26-27, 70-72, 279-80, 603-24. Plaintiff also obtained intermittent treatment for his mental health symptoms through Veterans Affairs; although he had been referred to specialized assessments, there is no indication those were completed prior to December 2018. *See, e.g.*, Tr. 26-27, 37-38, 685-87. Perhaps as a result, none of plaintiff's treating or examining mental health sources proffered any medical opinions surrounding his diagnoses or functional limitations during the adjudication period.

And the only opinion evidence in the record – from the state agency consulting sources – indicated there was "insufficient evidence" to assess the severity of his medically determinable impairments of depression and anxiety prior to the date last insured. Tr. 101-04, 111-13. The ALJ found the state agency consulting source opinions "not persuasive" because they were "unsupported and inconsistent with the medical record." Tr. 56. In particular, the ALJ noted that the "record revealed positive findings for depression/anxiety" but also "a level of function greater than [the] one alleged by [plaintiff]." *Id*. The ALJ then cited to "unremarkable" routine clinical findings, which he found supported the conclusion that plaintiff could perform mental work consistent with the RFC. *Id*.

It is well-established that an ALJ's decision must be supported by substantial evidence. *See, e.g.*, 42 U.S.C. § 405(g). This means that ALJs cannot properly rely on their own lay knowledge to make medical interpretations of examination results or to determine the severity of medically determinable impairments. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999);

---

[3] Plaintiff believed he had mercury poisoning from dental fillings, despite never being tested (which, according to plaintiff, also impacted his gut microbe and contributed to his mental health symptoms). Tr. 330, 412-14, 417, 519, 637. He ultimately had his fillings removed and underwent a course of detox treatment that he read about and ordered via the internet, but his mental health symptoms persisted. Tr. 280, 319, 327, 329-30, 412.

Page 4 – OPINION AND ORDER

see also *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); *McAnally v. Berryhill*, 2020 WL 1443734, *6 (S.D. Cal. Mar. 25, 2020) ("[i]n making an RFC determination, an ALJ may not act as his own medical expert as he is simply not qualified to interpret raw medical data in functional terms . . . Instead, the ALJ should permit an examining physician or medical expert to evaluate the evidence") (citations and quotations omitted).

Here, the ALJ discredited the only medical opinions of record – which specified additional information was needed to define plaintiff's work-related abilities – and then impermissibly evaluated the impact of plaintiff's severe anxiety and depression based on his own interpretation of the record. *See McAnally*, 2020 WL 1443734 at *7 (reversing the ALJ's decision under analogous circumstances). This is especially problematic given that: (1) the ALJ mischaracterized the record insofar as plaintiff often presented as tearful, blunted, withdrawn, depressed, or anxious, with pressured or delayed speech; and (2) "observations of cognitive functioning during therapy sessions" – e.g., "good eye contact, organized and logical thought content, and focused attention" – "do not contradict [the claimant's] reported symptoms of depression and social anxiety." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); Tr. 26, 303, 310-12, 331, 335, 337, 339, 354, 463, 512, 524, 617, 620, 622, 686.

The ALJ thereby erred, and this error adversely affected each aspect of the sequential evaluation process (including plaintiff's other allegations of error surrounding his subjective symptoms statements and the lay testimony). *See Kartan v. Colvin*, 2016 WL 6038958, *7 (E.D. Cal. Oct. 14, 2016) (where "the ALJ rejected all of the [medical] opinions, the ALJ's reliance on the lack of objective medical evidence as a basis to reject Plaintiff's credibility was improper") (collecting cases). Indeed, the ALJ relied exclusively on plaintiff's treatment gaps and ability to

Page 5 – OPINION AND ORDER

attend exercise classes, and the lack of corroborating objective findings, to reject his and his mother's mental symptom testimony. Cf. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. ) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (citation and internal quotations omitted); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[a] patient may do [exercise] activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved"); see also *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) ("an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence") (citations omitted). The ALJ's decision is reversed in this regard.

**II.    Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); see also *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly evaluate plaintiff's RFC. Further proceedings would nonetheless be useful regarding the extent of plaintiff's allegedly disabling mental impairments. On one hand, it is undisputed that plaintiff's depression and anxiety are longstanding (with some treatment notes dating back to his time of service), and have persisted at significant levels despite regular and continuing treatment since April 2018. Tr. 39-40. On the other hand, plaintiff refused mental health medications and used marijuana frequently (e.g., three times per day), which may have exacerbated his symptoms. Tr. 310, 331, 334, 350, 353, 420. And the most recent chart notes from November 2019 show improvement with community involvement and socialization. Tr. 603-05, 690, 693. Finally, although plaintiff alleges disability as of January 2013, he denied any mental health symptoms at his first post-discharge medical appointment in February 2014 – in fact, plaintiff was "sleeping well," things were "going well" with his family, and he screened negative on myriad depression inventories – and thereafter attended college until the spring of 2015. Tr. 579-90. Accordingly, the record is ambiguous concerning if/when plaintiff's mental impairments became disabling.

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the ambiguity surrounding any potential disability onset date, coupled with the complex and longstanding nature of plaintiff's mental health conditions, the use of a consultative exam or medical expert specializing in psychology would be helpful. Therefore, upon remand, the ALJ must refer plaintiff to a psychological specialist for evaluation and/or consult a medical expert to review the entire record and opine as to plaintiff's functional abilities during the adjudication period and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 14th day of February, 2024.

_/s/ Jolie A. Russo_
Jolie A. Russo
United States Magistrate Judge
